# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN E. CARPENTER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 12-2483-CM |
| SOUTHWESTERN BELL TELEPHONE COMPANY and JOSEPH ARRI, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff John E. Carpenter brings this employment discrimination action claiming that his former employer, Southwestern Bell Telephone Company ("Southwestern Bell"), and his former supervisor, Joseph Arri, terminated his employment in violation of federal law. In particular, plaintiff claims that defendants violated 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 by discriminating against him and retaliating against him for complaining of discrimination.[1] Plaintiff proceeds pro se. The case is before the court on Defendants Southwestern Bell Telephone Company

---

[1] Plaintiff's response brief suggests that he also brings harassment/hostile work environment claims under § 1981 and Title VII. Defendants contend that the pretrial order does not include harassment claims, and therefore they are not part of the case. *See Elephant Butte Irrigation Dist. v. U.S. Dep't of Interior*, 538 F.3d 1299, 1302 (10th Cir. 2008) ("[T]he pretrial order is treated as superseding the pleadings and establishing the issues to be considered at trial."). Defendants do not move for summary judgment on these claims. Defendants are correct: the pretrial order does not list hostile work environment claims in the section "Theories of Recovery." But defendants ignore several other places in the pretrial order that reference harassment and/or hostile work environment. (*See, e.g.*, Doc. 42 at 1 ("This is an employment case involving claims of race discrimination, harassment, and retaliation . . . ."); 6 ("Defendants subjected Plaintiff to a hostile working environment (harassment) on account of his race and color . . . ."); 14 (listing an issue that one or more of the parties believes needs to be resolved as "Was Plaintiff subjected to a hostile work environment?").) The pretrial order is consistent with plaintiff's Complaint, which alleged that "Defendants' acts were based on Plaintiff's race, which were unwelcome to him, and sufficiently severe or pervasive to alter the terms or conditions of his work environment." (Doc. 1 at 4.) It is also consistent with plaintiff's administrative complaint. (*See id.* at 9 ("From February 2008, to November 21, 2008, I was subjected to harassment, in that I was constantly being disrupted from doing my work by co-workers.").) The court believes that plaintiff adequately preserved the hostile work environment claims for trial. Because defendants do not ask for summary judgment on these claims, they remain in the case.

-1-

and Joseph Arri's Motion for Summary Judgment (Doc. 46). For the following reasons, the court grants the motion.

## I. FACTUAL BACKGROUND

The following facts are taken largely from defendants' proposed uncontroverted facts. Plaintiff attempted to controvert a number of the facts, but did so with unsupported, immaterial, and/or irrelevant statements. Plaintiff also added a narrative consisting of his own factual statement, supported primarily by his own declaration. The court does not identify every instance in which it disregards plaintiff's proffered facts, but none of them properly controvert the facts (relayed below) that are material to this court's decision.

### A. Plaintiff's Employment

Plaintiff, an African American, is a former employee of Southwestern Bell. He worked for the company from the early 1980s to November 2008. Plaintiff, like all employees, was expected to comply with Southwestern Bell's Code of Business Conduct ("COBC"). The COBC requires that employees treat co-workers with respect. They must act courteously and professionally. The company does not permit threats, violence, or disruptive behavior.

In 2005, plaintiff became Manager of Outside Plant Planning and Engineering Design at Southwestern Bell's Mission, Kansas facility. Mr. Arri was plaintiff's supervisor for about three years. Arri reviewed plaintiff's performance in 2005, 2006, and 2007, giving plaintiff satisfactory marks.

### B. Plaintiff's February 2008 Outburst and Verbal Warning

On February 29, 2008, one of plaintiff's co-workers, Russ Claybaker, was whistling in the workplace. Plaintiff became upset. He shouted at Mr. Claybaker to "stop that whistling." Plaintiff then left his work area and went home. When he left, he pushed the door too hard, damaging the

drywall behind the door. Following the incident, three co-workers expressed concern with plaintiff's behavior: Sheila Holmes, Kathy Wolfe, and Mildred Frazier.

On March 4, 2008, plaintiff and Mr. Arri discussed the incident. Plaintiff apologized. He said that he "felt sorry about what happened that day" and he "didn't want [his co-workers] to feel threatened." Mr. Arri recommended that plaintiff use noise cancellation headphones if necessary. Plaintiff disagrees that headphones were a reasonable option, as he could not hear fire alarms when he had them on.

### C. Plaintiff's August 2008 Outburst and Verbal Warning

On August 4, 2008, Mr. Claybaker was whistling again by plaintiff's desk. In an angry, stern voice, plaintiff said, "Stop whistling. Stop the damn whistling, please." Plaintiff told Mr. Arri that he was not going to take the noise anymore, and if it happened again, he was going to do something about it. Mr. Arri responded that plaintiff's expectation—i.e., that there should be no noise in the office that did not support the work being done—was impractical. Plaintiff later assured Mr. Arri that he would never respond physically to the noise. Plaintiff does not recall the August 4 conversation with Mr. Arri, but he does recall telling Mr. Arri that he was aware that doing harm to a co-worker would cause him to go to jail, and that "you are just not worth it."

The next day, Mr. Arri distributed a memo requesting that the workgroup cooperate in controlling office noise, including whistling. Mr. Arri also discussed noise complaints with Carol Gardner, who supervised the other team on the floor. Ms. Gardner supervised Mr. Claybaker. She also asked her team to minimize office noise.

### D. Plaintiff's September 2008 Outburst and Written Warning

On September 4, 2008, plaintiff heard more whistling. When he looked up, plaintiff saw two co-workers duck down in a cubicle. Plaintiff loudly said, "So you think it's funny. Well, I'm going to show you how funny it is. I'm going to file my complaint right now against all of you."

Plaintiff started to leave, but the co-worker who whistled said, "Grow up and act like a manager." Plaintiff walked to the elevator, saying he was "sick of" them. Before leaving, however, plaintiff walked back to the group, and said, "Who do you think you are telling me to grow up?" One of the co-workers told him, "John, go home. Just go home."

Mr. Arri was out of the office, but five employees contacted him to report the incident: Wes Thornton, Traycie Haney, Sheila Holmes, Dan Clevenger, and Kathy Wolfe. They indicated that they filed a report with the Company Security department. Mr. Arri instructed plaintiff to work from home pending an investigation.

During the company's investigation, employees reported that plaintiff yelled the following comments:

- "You all are going to think this sh*t is funny when I file a formal complaint against you all";
- "[You're] not going to f*cking tell me what to do";
- "Tell the boss I am leaving . . . I don't have to put up with this sh*t"; and
- "F*ck you all."

Employees also expressed the following concerns:

- Feeling "very upset and concerned about everyone's safety";
- "Wondering if [plaintiff] would come back into the building";
- Feeling "like [plaintiff] was going to completely lose control;" and
- Feeling like they "didn't know what was going to set him off next," they "were walking on egg shells," and they were "threatened."

Plaintiff returned to work on September 10. Plaintiff met with Mr. Arri and admitted he lost his temper on September 4. While plaintiff was gone, Mr. Arri had documented twenty-four noise instances in the workplace, including whistling. Mr. Arri noted that Mr. Claybaker whistled both in the office and outside while on a smoke break. In light of his observations, he explained to plaintiff that he did not believe co-workers were targeting their noises at plaintiff.

On September 11, Mr. Arri gave plaintiff a Written Warning. The warning outlined plaintiff's behavior, explained that the warning was a result of his continued unsatisfactory behavior in violation of the COBC, and specifically warned that failure to take immediate corrective action would result in discipline, including termination from employment. The next day, plaintiff submitted a written disagreement with the warning.

### E. Plaintiff's Complaint

On the evening of September 4—after Mr. Arri told him to work from home—plaintiff called the Company's Equal Employment Opportunity hotline and reported that Carol Peden, Traycie Haney, Russ Claybaker, and Larry Patterson were racially harassing him by whistling and making other non-work-related noises.

### F. Plaintiff's October 2008 Outburst and Discharge

On October 22, 2008, plaintiff believed he heard Larry Patterson whistle outside his cubicle. Plaintiff confronted Mr. Arri in a conference room about allowing Mr. Patterson to whistle and demanded that Mr. Arri make him stop. Plaintiff claimed that he was trying to work and "ha[d] to do this sh*t" (i.e., record whistling on his cell phone). Mr. Arri told plaintiff that he had previously spoken to Mr. Patterson about whistling. Plaintiff responded, "But you would not say anything to him now? That is what I am talking about, you will say something to me when they have a problem with me but you don't have the balls to say anything to them when they clearly did something wrong."

When the company later investigated the circumstances, an employee outside of the conference room reported that plaintiff's voice became increasingly louder. Eventually, his yelling distracted her from a phone call and made her wonder "what was going to happen next." Plaintiff maintains that he was upset but not loud.

After the October 22 incident, Mr. Arri recommended plaintiff's termination. Department senior managers reviewed and approved the decision. On November 22, 2008, Mr. Arri informed plaintiff of the decision.

### G. Plaintiff's Alleged Evidence of Discrimination

Plaintiff claims that the following evidence supports his race discrimination claims:

- Plaintiff was the only black person in his unit.

- A non-black employee once walked past plaintiff's cubicle and said, "They don't want us over here; this is the dark side in more ways than one."

- After plaintiff got the manager position, he was with a co-worker, Bill Juno. When they saw another employee who was white, Juno told plaintiff, "You took his job right there."

- Another employee once told plaintiff that during a meeting, Greg Mullins gave favorable reviews about a white employee's performance but criticized plaintiff's performance.

- In 1991, a co-worker accused Ms. Peden of saying that if the manager did not want her to know the "f-ing password" she wanted nothing to do with the "f-ing system." Carol further criticized the manager, but was not fired.

- Mr. Claybaker and Mr. Patterson continued to whistle in the workplace. They were not disciplined for their conduct, but plaintiff was.

Mr. Arri supervised neither Ms. Peden nor Mr. Claybaker during the relevant times.

**II. Legal Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**III. Analysis**

To determine whether plaintiff can survive summary judgment on his termination claims, the court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under *McDonnell Douglas*, plaintiff must first establish a prima facie case of racial discrimination and/or retaliation. If plaintiff carries that burden, defendant must then articulate a facially nondiscriminatory reason for the challenged employment action. *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998) (citations omitted). If defendant makes such a showing, the burden reverts to plaintiff to prove the proffered nondiscriminatory reason is pretextual. *Id*. (citations omitted). These standards apply to both plaintiff's § 1981 claims and Title VII claims. *See Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994).

**A. Title VII Claims – Mr. Arri**

Plaintiff concedes that summary judgment is appropriate on his Title VII claims against Mr. Arri. An individual cannot be held personally liable under Title VII. *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996). The court therefore grants summary judgment on these claims.

**B. Discrimination Claims**

Plaintiff alleges that defendants illegally discriminated against him by discharging him because of his race. To allow these claims to proceed, the court must find that a genuine issue of material fact exists as to whether plaintiff can show a prima facie case of discrimination. A prima facie case is a flexible standard, adjusted to fit "the context of the claim and the nature of the adverse employment action alleged." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). The elements remain the same whether that case is brought under § 1981, § 1983, or Title VII. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quotations omitted). Generally, to establish a prima facie case of race discrimination, plaintiff must prove: (1) he is a member of a protected class; (2) he qualified for the position or was doing satisfactory work; (3) he was subject to some adverse employment decision; and (4) the adverse decision occurred under circumstances giving rise to an inference of unlawful discrimination. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007) (quoting *Plotke*, 405 F.3d at 1100). Defendants contend that plaintiff can show neither that he was satisfactorily performing his job nor that there was an inference of discrimination surrounding his discharge.

Plaintiff was involved in four incidents involving threatening outbursts within a few months. This behavior did not comply with COBC policies. He yelled and cursed at his co-workers and his supervisor. He pushed a door into a wall, damaging the wall. And his co-workers indicated that they were scared by his behavior. This does not constitute satisfactory performance of one's job—regardless of what prior performance appraisals stated. For this reason, plaintiff cannot satisfy the second element of his prima facie case.

The record also lacks evidence from which the court can infer discrimination. Southwestern Bell gave plaintiff written and verbal warnings after his third outburst—specifically advising plaintiff

that further similar behavior would lead to discipline, including possible termination. And then plaintiff had a fourth outburst about six weeks later.

The evidence plaintiff offers to show that his termination was discriminatory is inadequate to create a genuine issue of material fact for trial. First, the statements by Bill Juno, Greg Mullins, and an unnamed co-worker are nothing more than stray remarks by non-decisionmakers. *See Mitchell v. City of Wichita, Kan.*, 140 F. App'x 767, 778–79 (10th Cir. 2005) ("Evidence demonstrating discriminatory animus in the decisional process needs to be distinguished from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process."); *Cuenca v. Univ. of Kan.*, 101 F. App'x 782, 787 n.2 (10th Cir. 2004) ("In general, statements by a non-decisionmaker . . . cannot be used to establish that a decision was tainted by discriminatory animus.").

Second, the other (undisciplined) workers did not engage in similar conduct and/or did not have the same supervisor. Whistling did not violate company policy or make other employees feel threatened. And Ms. Peden's incident occurred over twenty years before plaintiff's incidents, under a different supervisor. This evidence simply does not compare in any way to plaintiff's behavior leading to his termination. *See Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 922 (10th Cir. 2004) (noting that the comparison of disciplinary actions "is relevant only to show the bias of the person who decided upon the disciplinary action"); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1233 (10th Cir. 2000) ("Different supervisors will inevitably react differently to employee subordination.").

Plaintiff also attempts in his brief to present evidence that "Janice, a non-Black co-worker, has often demonstrated emotional outbursts in the office." The court finds this insufficient for two reasons: First, it contradicts plaintiff's testimony in his deposition and is an effort to create a sham issue of fact. *See Michelson v. Enrich Intern, Inc.*, 6 F. App'x 712, 718 (10th Cir. 2001) ("Where an

affidavit attempted to create a sham fact issue by contradicting sworn deposition testimony, it may be properly disregarded by the court."). Second, the assertion is wholly conclusory, lacking the detail necessary to establish whether Janice engaged in conduct of similar seriousness.

The results of plaintiff's unemployment and/or Kansas Human Rights Commission ("KHRC") proceedings do not alter this conclusion. *See* Kan. Stat. Ann. § 44-709(j) ("Any finding of fact or law, judgment, determination, conclusion or final order . . . is not admissible or binding in any separate or subsequent action or proceeding, between a person and a present or previous employer . . . ."); *Palmer v. Leawood S. Country Club, Inc.*, No. 97-2515-KHV, 1998 WL 724050, at *7 (D. Kan. Sept. 9, 1998) ("[U]nemployment compensation proceedings do not have res judicata or collateral estoppel effects."); *Timmons v. White*, 314 F.3d 1229, 1234 (10th Cir. 2003) (holding that employer is not bound by prior adverse EEOC finding when a claim is brought under Title VII); *Hamwi v. Den-Tex Cent., Inc.*, No. 08-4151-SAC, 2010 WL 3878865, at *2 (D. Kan. Sept. 28, 2010) (excluding evidence of KHRC findings).

Plaintiff has not provided sufficient evidence to establish a prima facie case of discrimination, and the court dismisses these claims (both Title VII and § 1981).

Even if the court were to assume that plaintiff's evidence met the prima facie case standard, defendants have proffered a legitimate, non-discriminatory reason for plaintiff's discharge: his continued conduct in violation of the COBC despite repeated warnings. The burden therefore shifts back to plaintiff to show that defendants' reason for his discharge was pretextual. For all of the same reasons stated above in the court's analysis of plaintiff's prima facie case, he has not shown pretext. The result remains the same, and the court alternatively grants defendants' motion on these grounds.

**C. Retaliation Claims**

Plaintiff also alleges that defendants retaliated against him for making complaints of illegal discrimination. For plaintiff to establish a prima facie case of retaliation, he must show: (1) that he engaged in protected opposition to discrimination; (2) "that a reasonable employee would have found the challenged action materially adverse . . ."; and (3) that a causal connection existed between the protected activity and the materially adverse action. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 n.2 (10th Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

The problem with plaintiff's retaliation claims is in a lack of causation. Plaintiff engaged in protected activity on September 4 (hotline complaint) and September 12 (rebuttal letter)—after two incidents and in connection with a third. Southwestern Bell terminated his employment on November 22, after a fourth incident. *See Twigg v. Hawker Beachcraft Corp.*, 659 F.3d 987, 1001–02 (10th Cir. 2011) (assessing temporal proximity "minimal probative value" when intervening events supported the employer's action). Over ten weeks passed between September 12 and November 22. And plaintiff only called the hotline after Mr. Arri told him to work from home pending investigation into the third incident. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) (affirming summary judgment on retaliation claim when the employee received warnings before engaging in protected activity). Considering the timing of the complaint, the passage of time, and the intervening event, the temporal proximity of the complaint to the termination alone is not sufficient to create a genuine issue of material fact as to causation. *See Webb v. Level 3 Comms., LLC*, 167 F. App'x 725, 734 (10th Cir. 2006) (finding a time period between nine weeks and just under twelve weeks "probably too far apart . . . to establish causation by temporal proximity alone"); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[U]nless the termination is very closely connected in time to the

protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation.").

Again, even if the court were to assume that plaintiff could establish a prima facie case, his retaliation claim would still be subject to dismissal. Defendants proffered a legitimate reason for plaintiff's termination, and plaintiff's evidence is insufficient to establish pretext, for the same reasons discussed throughout this opinion. The court grants summary judgment on plaintiff's retaliation claims.

### IV. Conclusion

Defendants have shown that they are entitled to summary judgment on plaintiff's claims for discrimination and retaliation. Because defendants did not move for summary judgment on plaintiff's hostile work environment claims, however, those claims remain for trial.

**IT IS THEREFORE ORDERED** that Defendants Southwestern Bell Telephone Company and Joseph Arri's Motion for Summary Judgment (Doc. 46) is granted. But this does not dispose of all of plaintiff's claims. Plaintiff's claims for hostile work environment remain for trial.

Dated this 13th day of November, 2013, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**